## UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

| | | |
|---|---|---|
| MICHAEL KENT, Individually and On Behalf of All Others Similarly Situated, | ) ) ) | |
| Plaintiff, | ) ) | Case No. _____ |
| v. | ) ) ) | JURY TRIAL DEMANDED |
| MEDIDATA SOLUTIONS, INC., TAREK SHERIF, GLEN DE VRIES, CARLOS DOMINGUEZ, GEORGE MCCULLOCH, NEIL KURTZ, MARIA RIVAS, LEE SHAPIRO, and ROBERT B. TAYLOR, | ) ) ) ) ) ) ) | CLASS ACTION |
| Defendants. | ) ) | |

## COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934

Plaintiff, by his undersigned attorneys, for this complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

## NATURE OF THE ACTION

1. This action stems from a proposed transaction announced on June 12, 2019 (the "Proposed Transaction"), pursuant to which Medidata Solutions, Inc. ("Medidata" or the "Company") will be acquired by Dassault Systèmes SE ("Guarantor"), Dassault Systèmes Americas Corp. ("Parent"), and 3DS Acquisition 6 Corp. ("Merger Sub," and together with Guarantor and Parent, "Dassault").

2. On June 11, 2019, Medidata's Board of Directors (the "Board" or "Individual Defendants") caused the Company to enter into an agreement and plan of merger (the "Merger Agreement") with Dassault. Pursuant to the terms of the Merger Agreement, Medidata's stockholders will receive $92.25 in cash for each share of Medidata common stock they own.

3.     On July 19, 2019, defendants filed a proxy statement (the "Proxy Statement") with the United States Securities and Exchange Commission (the "SEC") in connection with the Proposed Transaction, which scheduled a stockholder vote on the Proposed Transaction for August 16, 2019.

4.     The Proxy Statement omits material information with respect to the Proposed Transaction, which renders the Proxy Statement false and misleading.   Accordingly, plaintiff alleges herein that defendants violated Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "1934 Act") in connection with the Proxy Statement.

## JURISDICTION AND VENUE

5.     This Court has jurisdiction over the claims asserted herein pursuant to Section 27 of the 1934 Act because the claims asserted herein arise under Sections 14(a) and 20(a) of the 1934 Act and Rule 14a-9.

6.     This Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7.     Venue is proper under 28 U.S.C. § 1391(b) because a substantial portion of the transactions and wrongs complained of herein occurred in this District.

## PARTIES

8.     Plaintiff is, and has been continuously throughout all times relevant hereto, the owner of Medidata common stock.

9.     Defendant Medidata is a Delaware corporation and maintains its principal executive offices at 350 Hudson Street, 9th Floor, New York, New York 10014.   Medidata's

common stock is traded on the NasdaqGS under the ticker symbol "MDSO."  Medidata is a party to the Merger Agreement.

10.     Defendant Tarek Sherif is Co-Founder, Chief Executive Officer, and Chairman of the Board of the Company.

11.     Defendant Glen de Vries is Co-Founder, President, and a director of the Company.

12.     Defendant Carlos Dominguez is a director of the Company.

13.     Defendant George McCulloch is a director of the Company.

14.     Defendant Neil Kurtz is a director of the Company.

15.     Defendant Maria Rivas is a director of the Company.

16.     Defendant Lee Shapiro is a director of the Company.

17.     Defendant Robert B. Taylor is a director of the Company.

18.     The defendants identified in paragraphs 10 through 17 are collectively referred to herein as the "Individual Defendants."

## CLASS ACTION ALLEGATIONS

19.     Plaintiff brings this action as a class action on behalf of himself and the other public stockholders of Medidata (the "Class").  Excluded from the Class are defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any defendant.

20.     This action is properly maintainable as a class action.

21.     The Class is so numerous that joinder of all members is impracticable.  As of June 7, 2019, there were approximately 62,307,638 shares of Medidata common stock outstanding, held by hundreds, if not thousands, of individuals and entities scattered throughout the country.

22.     Questions of law and fact are common to the Class, including, among others, whether defendants will irreparably harm plaintiff and the other members of the Class if

defendants' conduct complained of herein continues.

23.     Plaintiff is committed to prosecuting this action and has retained competent counsel experienced in litigation of this nature.  Plaintiff's claims are typical of the claims of the other members of the Class and plaintiff has the same interests as the other members of the Class. Accordingly, plaintiff is an adequate representative of the Class and will fairly and adequately protect the interests of the Class.

24.     The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for defendants, or adjudications that would, as a practical matter, be dispositive of the interests of individual members of the Class who are not parties to the adjudications or would substantially impair or impede those non-party Class members' ability to protect their interests.

25.     Defendants have acted, or refused to act, on grounds generally applicable to the Class as a whole, and are causing injury to the entire Class.  Therefore, final injunctive relief on behalf of the Class is appropriate.

## SUBSTANTIVE ALLEGATIONS

*Background of the Company and the Proposed Transaction*

26.     Medidata leads the digital transformation of life science, with the world's most used platform for clinical development, commercial, and real-world data.

27.     Powered by artificial intelligence and delivered by top-ranked industry experts, the Company helps pharmaceutical, biotech, medical device companies, and academic researchers accelerate value, minimize risk, and optimize outcomes.

28.     Medidata and its companies, Acorn AI and SHYFT, serve 1,300 customers and partners worldwide and empower more than 150,000 certified users every day to create hope for

millions of patients.

29.     On June 11, 2019, Medidata's Board caused the Company to enter into the Merger

Agreement with Dassault.

30.     Pursuant to the terms of the Merger Agreement, Medidata's stockholders will

receive $92.25 in cash for each share of Medidata common stock they own.

31.     According to the press release announcing the Proposed Transaction:

Dassault Systèmes (Euronext Paris: #13065, DSY.PA) and Medidata Solutions,
Inc. (NASDAQ: MDSO), leader of the digital transformation of the Life Sciences
industry for clinical development, commercial, and real-world data intelligence,
today announced the signing of a definitive agreement for Dassault Systèmes to
acquire Medidata in an all-cash transaction at a price of $92.25 per share of
Medidata, representing an enterprise value of $5.8 billion. The transaction was
unanimously approved by the Boards of Directors of both companies. Medidata's
fiscal year ended December 31, 2018, and its revenue was $636 million.

With the acquisition of U.S.-based Medidata and its clinical and commercial
solutions, Dassault Systèmes will reinforce its position as a science-based company
by providing the Life Sciences industry with an integrated business experience
platform for an end-to-end approach to research and discovery, development,
clinical testing, manufacturing and commercialization of new therapies and health
technologies. . . .

Completion of the acquisition is expected during the last quarter of 2019 and is
subject to certain regulatory approvals, approval by the majority of Medidata's
shareholders and other customary closing conditions.

***The Proxy Statement Omits Material Information, Rendering It False and Misleading***

32.     Defendants filed the Proxy Statement with the SEC in connection with the Proposed

Transaction.

33.     As set forth below, the Proxy Statement omits material information with respect to

the Proposed Transaction, which renders the Proxy Statement false and misleading.

34.     The Proxy Statement omits material information regarding the Company's

financial projections.

35.     The Proxy Statement fails to disclose: (i) all line items used to calculate unlevered free cash flow; and (ii) a reconciliation of all non-GAAP to GAAP metrics.

36.     The disclosure of projected financial information is material because it provides stockholders with a basis to project the future financial performance of a company, and allows stockholders to better understand the financial analyses performed by the company's financial advisor in support of its fairness opinion.

37.     The Proxy Statement also omits material information regarding the analyses performed by the Company's financial advisor in connection with the Proposed Transaction, Morgan Stanley & Co. LLC ("Morgan Stanley").

38.     With respect to Morgan Stanley's Discounted Cash Flow Analysis, the Proxy Statement fails to disclose: (i) all line items used to calculate unlevered free cash flow; (ii) the range of terminal values for Medidata; and (iii) the individual inputs and assumptions underlying the range of discount rates from 8.9% to 9.9% and the perpetual growth rate ranging from 2.0% to 4.0%.

39.     With respect to Morgan Stanley's Discounted Equity Value Analysis, the Proxy Statement fails to disclose: (i) Morgan Stanley's basis for applying a revenue multiple range of 5.0x to 7.0x; and (ii) the individual inputs and assumptions underlying the discount rate of 9.5%.

40.     With respect to Morgan Stanley's Illustrative Leveraged Buyout Analysis, the Proxy Statement fails to disclose Morgan Stanley's basis for selecting the leverageable EBITDAO, leverage multiple, financing terms, exit multiple, and target internal rate of return used in the analysis.

41.     With respect to Morgan Stanley's Equity Research Analysts' Price Target Analysis, the Proxy Statement fails to disclose: (i) the price targets observed by Morgan Stanley in the

analysis; (ii) the sources thereof; and (iii) the individual inputs and assumptions underlying the discount rate of 9.5%.

42.     When a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.

43.     The omission of the above-referenced material information renders the Proxy Statement false and misleading, including, *inter alia*, the following sections of the Proxy Statement: (i) Background of the Merger; (ii) Reasons for the Merger; Recommendation of the Medidata Board of Directors; (iii) Opinion of Morgan Stanley & Co. LLC; and (iv) Financial Forecasts.

44.     The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's stockholders.

## COUNT I

### Claim for Violation of Section 14(a) of the 1934 Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants and Medidata

45.     Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

46.     The Individual Defendants disseminated the false and misleading Proxy Statement, which contained statements that, in violation of Section 14(a) of the 1934 Act and Rule 14a-9, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not materially false or misleading.  Medidata is liable as the issuer of these statements.

47.     The Proxy Statement was prepared, reviewed, and/or disseminated by the Individual Defendants.  By virtue of their positions within the Company, the Individual Defendants were aware of this information and their duty to disclose this information in the Proxy Statement.

48.     The Individual Defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

49.     The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposed Transaction.  In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the Proxy Statement and in other information reasonably available to stockholders.

50.     The Proxy Statement is an essential link in causing plaintiff and the Company's stockholders to approve the Proposed Transaction.

51.     By reason of the foregoing, defendants violated Section 14(a) of the 1934 Act and Rule 14a-9 promulgated thereunder.

52.     Because of the false and misleading statements in the Proxy Statement, plaintiff and the Class are threatened with irreparable harm.

## COUNT II

### Claim for Violation of Section 20(a) of the 1934 Act
### Against the Individual Defendants

53.     Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

54.     The Individual Defendants acted as controlling persons of Medidata within the meaning of Section 20(a) of the 1934 Act as alleged herein.  By virtue of their positions as officers and/or directors of Medidata and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that plaintiff contends are false and misleading.

55.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement alleged by plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

56.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same.  The Proxy Statement contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction.  They were thus directly involved in the making of the Proxy Statement.

57.     By virtue of the foregoing, the Individual Defendants violated Section 20(a) of the 1934 Act.

58.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the 1934 Act and Rule 14a-9, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the 1934 Act.  As a direct and proximate result of defendants' conduct, plaintiff and the Class are threatened with irreparable harm.

### **PRAYER FOR RELIEF**

**WHEREFORE**, plaintiff prays for judgment and relief as follows:

A.     Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B.     In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C.     Directing the Individual Defendants to disseminate a Proxy Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D.     Declaring that defendants violated Sections 14(a) and/or 20(a) of the 1934 Act, as well as Rule 14a-9 promulgated thereunder;

E.     Awarding plaintiff the costs of this action, including reasonable allowance for plaintiff's attorneys' and experts' fees; and

F.     Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby requests a trial by jury on all issues so triable.

Dated: July 22, 2019

**RIGRODSKY & LONG, P.A.**

By:  */s/ Gina M. Serra*
     Brian D. Long (#4347)
     Gina M. Serra (#5387)
     300 Delaware Avenue, Suite 1220
     Wilmington, DE 19801
     Telephone: (302) 295-5310
     Facsimile: (302) 654-7530
     Email: bdl@rl-legal.com
     Email: gms@rl-legal.com

**OF COUNSEL:**

**RM LAW, P.C.**
Richard A. Maniskas
1055 Westlakes Drive, Suite 300
Berwyn, PA 19312
Telephone: (484) 324-6800
Facsimile: (484) 631-1305
Email: rm@maniskas.com

*Attorneys for Plaintiff*